**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

URSULA Y LAWSON MCINTOSH, et al.,

Plaintiffs,

v.

BUTLER COUNTY CHILDREN'S SERVICES BOARD, et al.,

Defendants.

Case No. 1:09-cv-274

Spiegel, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

### I. Procedural History

In April of 2009, Plaintiffs Ursula Y. Lawson McIntosh, Thomas C. Lawson, Sr., and Linda S. Lawson filed this action *pro se*, on their behalf and on behalf of three minor children, including Plaintiff Ursula Lawson's son, N.M., concerning proceedings in Butler County, Ohio, Juvenile Court. (Doc. 4). Plaintiffs originally named the Butler County Children's Services Board ("BCCSB") and ten individuals as Defendants, and alleged that all Defendants conspired together in violation of Plaintiffs' rights under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. Plaintiffs specifically stated that all ten individual Defendants were named in their "personal and official" capacities. (*Id.*).

Over the past two years, all claims against all but one of the individual Defendants have been dismissed by this Court. (*See* Docs. 28, 30, 34, 39, 45). In addition, all claims brought by Plaintiffs on behalf of their minor children were dismissed without prejudice,

after Plaintiffs were forewarned that they could not represent their children, and the Volunteer Lawyers for the Poor Association was unable to secure representation. (Docs. 39, 45).

Discovery on this case closed on April 29, 2011 (Doc. 50). On May 31, 2011, the sole remaining Defendant, Alisa Pedoto,[1] filed a motion for summary judgment. In lieu of a response, Plaintiff Linda S. Lawson filed an unopposed motion to dismiss her claims. The other two remaining Plaintiffs, Ursula Lawson McIntosh and Thomas C.W. Lawson, Sr., filed a response in opposition to Defendant's motion for summary judgment, to which Defendant Pedoto has filed a reply.

A final pretrial conference is presently scheduled for a date in September, yet to be determined, with a trial date also tentatively scheduled for October. Pursuant to local practice, the pending motions have been referred to the undersigned magistrate judge for initial review and a report and recommendation. 28 U.S.C. §636(b)(1). Having completed that review, I now recommend that Defendant's motion for summary judgment be **granted** and that all other pending motions, including Plaintiff's motion to dismiss, be denied as moot.

**II. Factual Background**

There is no dispute that at all relevant times, Defendant Pedoto was a caseworker for the Butler County Children's Services Board. (Doc. 60-1 at ¶1). It is also undisputed that Plaintiff Ursula became mentally ill and was hospitalized for treatment for a period of weeks in September 2006. (Doc. 60-1. Pedoto Affidavit (hereinafter "Affidavit") at ¶¶4-6,

[1] Defendant Pedoto is now known as Alisa Muncy, (*see* Doc. 60 at 1), but for the convenience of this Court, this R&R will continue to refer to her by her former surname.

12, 17, 21, 28). In their initial complaint as well as in a construed amended complaint, Plaintiffs allege that, on September 20, 2006, BCCSB through Pedoto brought an action in Butler County Juvenile Court to determine whether N.M. was a dependent child. (Doc. 4 at 6, ¶18). State records confirm that the juvenile court determined that N.M. was a dependent child and awarded temporary custody to BCCSB of N.M. in an "emergency ex parte order" on September 20, 2006 (Affidavit at ¶13; Doc. 23-1 at 1). Plaintiffs allege that the ex parte order was issued on September 20, 2006 only after Alisa Pedoto, without probable cause, presented false evidence that N.M. was a dependent child. (*Id.* at ¶19). The temporary order of custody was upheld on September 21, 2006, (Affidavit at ¶16), but BCCSB was unable to locate N.M. initially and did not assume custody of him on either September 20 or September 21, 2006.

The following day, on September 22, 2006, the juvenile court held a hearing at which N.M.'s grandfather, Plaintiff Tom Lawson, appeared, represented by counsel. (Doc. 23-1 at 1). Following that hearing, the state court determined that it was in the best interest of the child to place N.M. in the temporary custody of his maternal grandparents. The order notes that N.M.'s "mother and father failed to appear for the scheduled hearing."[2] The juvenile court ordered a "home study regarding William[3] and Linda Lawson" and directed the BCCSB to "provide protective weekly supervision" at the grandparents' home. (*Id.*). Although Plaintiffs' complaint alleges that the Butler County Magistrate held on September

---

[2]In recognition of the competency issue as to Ursula Lawson McIntosh, the Court ordered a Guardian ad Litem to be appointed for that Plaintiff.

[3]Plaintiff's name is identified in the case caption as Thomas W.C. Lawson, Sr. Plaintiff testified that his full name is William Thomas Clay Lawson, Sr. (Doc. 58 at 3); throughout the documents in both this litigation and in state court, the same grandparent has been referred to as Tom or Thomas Lawson.

22, 2006 that N.M. "was not a dependent child," (Doc. 4 at 7, ¶22), that allegation is contradicted by the plain terms of the juvenile court order. (Doc. 23-1 at 1).

During a home visit conducted on September 22, 2006 pursuant to the same order, N.M. told Pedoto that his grandfather whipped him with a belt with his pants down. (Affidavit at ¶¶31-34). At a hearing held before the juvenile court on October 2, 2006, at which both Plaintiffs appeared, the juvenile court scheduled a follow-up shelter care hearing for October 13, 2006. (Doc. 23-1 at 4). Just prior to that hearing, on October 12, 2006,[4] BCCSB obtained police reports reflecting that Plaintiff Thomas had a history of violent criminal behavior. (Affidavit at ¶35). On the same day that it obtained that information, BCCSB, through its prosecuting attorney, filed a motion seeking a temporary change of custody back to BCCSB. Finding that "there is probable cause to believe that the issuance of the following orders are necessary to prevent immediate or threatened emotional harm to the child...or are otherwise in the best interests of said child," on October 12, 2006, the Court granted BCCSB's request through a second emergency ex parte order. (*Id*. at ¶¶35-36; Doc. 23-1 at 6). However, after a shelter care hearing held at 8:30 am on October 13, 2011, N.M was returned to the custody of his grandparents, including Thomas Lawson, Sr.

At the October 13, 2011 hearing, N.M.'s biological father, Brandon McIntosh, appeared for the first time. Plaintiff Ursula Lawson also appeared, as did her appointed Guardian ad Litem ("GAL"), both grandparents (Linda and Tom Lawson) and Linda's attorney. (Doc. 23-1 at 8). Although the juvenile court ordered temporary custody of N.M.

---

[4]Plaintiffs allege that the date was October 1, 2006 (Doc. 4 at 7, ¶¶23-24, but state court records confirm the accuracy of Defendant's representation of the date as October 12, 2006.

to be returned to his maternal grandparents, the court directed the BCCSB to continue to provide weekly protective supervision of N.M. at their home. (*Id.*).

The state court reviewed the facts that led to the temporary emergency change in custody the day before, including the criminal history of Thomas Lawson, the mental illness of Ursula, and the allegation that "Thomas or Linda use physical discipline (a belt)" on N.M. (Doc. 23-1 at 8). However, the court noted that Thomas Lawson's criminal history was 8 years old, and that evidence that Mr. Lawson may continue to use intimidation when dealing with others was not evidence that he "acts in that manner" regarding the child. The juvenile court also found that both biological parents "have consistently been in favor of placement" of the child with his grandparents. (Doc. 23-1 at 9). Therefore, the state court determined that the best interests of the child favored a return to the grandparents, with an additional order that the grandparents were to "refrain from the use of physical discipline" and continue to "permit the representative(s) of the BCCSB and the GAL to enter their home and to communicate with [N.M.] whenever a request is made to do so." (Doc. 23-1 at 9). A pretrial hearing was set for December 21, 2006, but there is nothing in this federal record to indicate what occurred at that or any subsequent juvenile court proceeding, until April 18, 2007. On that date, the juvenile court conducted an evidentiary style hearing in order to finally adjudicate the dependency of N.M. Both biological parents appeared, represented by counsel; Ursula was also represented by a GAL. Both maternal grandparents also appeared, as did Defendant Pedoto. (Doc. 23-1 at 11).

At the conclusion of the April 18, 2007 hearing, the juvenile court found that Ursula had placed N.M. "in the physical custody of the grandparents with the consent of [N.M.'s] father" during her hospitalization for mental health issues. However, the state court went

on to explain that despite the consent of the biological parents for the placement:

> Mother did not arrange, at that time, to provide the child's Maternal Grandparents with either a custody order or a notarized statement regarding consent for medical care. During this time period, [N.M.'s] father was in regular contact with said grandparents. The BCCSB had not, however, had any contact with father.

(Doc. 23-1 at 11). In other words, the state juvenile court recognized the basis for the original finding that N.M. was a dependent child: 1) the custodial parent was hospitalized for mental health issues; 2) the custodial parent had not arranged for a custody order or adequate authority for medical care of N.M.; and 3) there was no information communicated to the state concerning the wishes or intention of the biological father.

Nevertheless, the state juvenile court recognized that since the original determination of dependency, additional information concerning the wishes of both parents and adequacy of placement with the maternal grandparents had been deveoped. Therefore, the state court determined:

> After considering the arguments of counsel and the report of the GAL, this magistrate finds that, based on the aforementioned facts, [N.M.] is not a dependent child as defined in Section 2451.04 of the Revised Code.

(Doc. 23-1 at 11). The state court concluded that it was in the best interests of the child to vacate its prior orders concerning custody and supervision by BCCSB, and dismiss the case. (*Id.*). Two years later on April 17, 2009, Plaintiffs tendered their complaint to this Court.

This Court previously recommended the denial of Defendant Pedoto's motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), concluding that "allegations that [Pedoto] falsified evidence and threatened plaintiffs Thomas and Linda Lawson" in order to obtain two ex parte emergency orders (dated September 20,2006 and October 12,

2006), arguably were sufficient to state a claim under liberal pleading standards. (Doc. 30 at 10). Plaintiffs had alleged that Pedoto "brought on an action in Butler county juvenile court" and "falsely presented evidence to" the Prosecutor for Butler County Juvenile Court (Doc. 4 at 6, ¶¶18-19, *id.* at 8, ¶32) and that the Prosecutor "determined that...N.M. was in fact a dependent child. (*Id.* at 6, ¶ 20)." (Doc. 30 at 10). Noting that this Court is required to construe Plaintiffs' allegations liberally, the Court found that Pedoto was not entitled to absolute immunity to the extent that Plaintiffs alleged that Defendant "falsely presented evidence to the prosecutor and threatened ...Thomas and Linda Lawson." The Court reasoned that while social workers are entitled to absolute immunity when acting in their capacity as legal advocates, such as initiating court actions or testifying under oath, they are not entitled to absolute immunity for performing administrative, investigative, or other functions. (Doc. 30 at 11, *citing Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000)).

**III. Analysis**

**A. Summary Judgment Standard of Review**

Unlike this Court's prior review of Defendants' motion to dismiss, which focused on initial pleadings, the Court's review of the pending motion for summary judgment occurs after the completion of full discovery. Therefore, the Court may review not only the pleadings, but also any probative evidence that the parties place in the record in support of or in opposition to the motion, to determine whether judgment is warranted.

In considering a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the

nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks and additional citations omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c), internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiffs, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiffs' wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-

sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, inferences are not to be drawn out of thin air. Rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244-45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

**B. Defendant's Motion**

To state a claim under 42 U.S.C. §1983, Plaintiffs must show that Defendant Pedoto, acting under color of state law, deprived them of a right, privilege or immunity secured by the Constitution or laws of the United States. *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008). Defendant argues that she is entitled to judgment as a matter of law based upon the doctrine of absolute immunity. In the alternative, she argues that she is entitled to qualified immunity, because neither Plaintiff can show that Defendant deprived him or her of any Constitutional right. As support for her motion, Defendant relies upon her own affidavit, attached to her motion, as well as the deposition transcripts of Thomas and Linda Lawson (Docs. 59, 60).

As previously stated, Defendant was named by Plaintiffs both in her "personal and official" capacities. Defendant's motion for summary judgment treats Plaintiffs' suit as if

brought against her solely in her individual capacity. That is appropriate, to the extent that a claim against a Defendant in his or her "official" capacity is the same as a claim against the County entity in this case, and all claims against BCCSB were previously dismissed. *See also generally Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000)(social worker could not be held liable in official capacity since she was not final decision maker of County, and plaintiff failed to show or even allege that County had official policy that violated constitutional rights).

**1. Re-examining Absolute Immunity**

In addition to employing the different standard applicable to summary judgment motions filed after discovery as opposed to the more lenient standard applicable to a Rule 12(b)(6) motion, Defendant urges this Court to re-examine her defense of absolute immunity in light of the recent Sixth Circuit case of *Pittman v. Cuyahoga County Dept. of Children and Family Services*, 640 F.3d 716, 724-725 (6th Cir. 2011). In *Pittman*, the Sixth Circuit clarified the doctrine that "[f]amily service workers are absolutely immune from liability in filing [a] juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings." *Id.,* 640 F.3d at 724-725 (*quoting Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989)). Caseworkers are likewise immune to the extent that they file affidavits, provide testimony, and make recommendations to the juvenile court, including "the necessary tasks to achieve [the goal of protecting the health and well-being of the child] without the worry of intimidation and harassment from dissatisfied parents." *Id.*, at 725 (quoting *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984)). Absolute immunity extends to the decision to file a case and presentation of materials to a judicial

officer. *See Holloway v. Brush*, 220 F.3d at 775 (internal quotations and citations omitted).

In *Pittman*, the district court initially had concluded that a caseworker was not entitled to immunity for her actions in allegedly "regularly, repeatedly and on an ongoing basis misrepresenting [the father's] status, his whereabouts and his attitude toward parenting [the child] in ...filings to the Juvenile Court," by making similar misrepresentations when "'participating in agency decisions' regarding the placement and custody of [the child]" and by "'completely cut[ting] [the father] out of the [placement and custody] process.'" *Id.,* 640 F.3d at 723-724. In other words, just as in this case, in *Pittman* the Plaintiff had alleged that the caseworker made material misrepresentations to the agency and to the court in the original complaint filed with the juvenile court, in her affidavit supporting the agency's motion for custody, and in an affidavit concerning service of process on the father.

Reversing the district court's denial of immunity, the Sixth Circuit first held that nearly all of the caseworker's actions were performed in her capacity as a legal advocate, thus entitling her to absolute immunity. *Id.* at 724. The appellate court reasoned that an allegation that the caseworker made intentional misrepresentations to the juvenile court "does not affect the conclusion that she is entitled to absolute immunity." *Id.* at 725. Explaining the policy concerns at play in which absolute immunity represents "a balance between...evils," the court held that caseworkers, like prosecutors, are entitled to the same type of prosecutorial immunity even when application of the immunity would bar "§1983 suits arising out of even unquestionably illegal or improper conduct." *Id*. at 725-726 (quoting *Cady v. Arenac Cnty*., 574 F.3d 334, 340 (6th Cir. 2009)).

In previously denying Defendant Pedoto's claim of absolute immunity in this case, this Court did not have the benefit of Defendant's uncontested affidavit for review, nor had the Sixth Circuit yet decided *Pittman*. Although the Court's analysis that Defendant Pedoto is not entitled to immunity for "administrative, investigative, or other functions" remains accurate, *Pittman* underscores the breadth of the scope of conduct entitled to absolute immunity. Thus, a claim that a caseworker has made false reports to a court based upon her alleged failure to properly investigate a parent is within the scope of "legal advocacy," to which absolute immunity applies. *Id.,* 640 F.3d at 726 (citing *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 421 (6th Cir. 2001)). Because Ohio law charges the juvenile court with making custody determinations, the *Pittman* Court held that a caseworker's "'function of making....recommendations'" on such matters, "'*including the underlying investigation*, is ...intimately related to the judicial phase of child custody proceedings' and therefore protected by absolute immunity." *Id*. at 726 (quoting *Rippy*, 270 F.3d at 422-24)(emphasis original).

Having reconsidered Defendant's claim of absolute immunity in the context of Defendant's current motion and the Sixth Circuit's guidance in *Pittman*, I conclude that Defendant is entitled to judgment as a matter of law insofar as Plaintiffs base their claims upon: 1) Defendant's alleged failure to properly investigate N.M.'s "dependent" status; or 2) Defendant's alleged false presentation of evidence to the juvenile court.

**2. Defendant's Claim of Qualified Immunity**

Both in the alternative and in addition to her defense of absolute immunity, Defendant argues that she is at least entitled to qualified immunity. "[G]overnment officials

performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rippy*, 270 F.3d at 424 (internal quotations and citations omitted). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs,*, 475 U.S. 335, 341 (1986)). In order to defeat a motion for summary judgment that presents a defense of qualified immunity, a plaintiff must show that the abridged right was "so clearly established when the acts were committed that any official in the defendant's position, measured objectively, would have understood that [she] was under an affirmative duty to refrain from the conduct." *Id.* In making this showing, Plaintiffs cannot rely upon non-specific and conclusory allegations. *Id.* On the other hand, to the extent that Plaintiffs have set forth a legitimate factual dispute, "a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff." *Pittman*, 640 F.3d at 722 (quoting *Sheets v. Mullins*, 287 F.3d 581, 585 (6th Cir. 2002), additional citation omitted).

Defendant argues that, despite Plaintiffs' conclusory references to various Constitutional Amendments, neither Plaintiff has articulated any specific conduct that abridged any clearly established constitutional right. For example, although Linda Lawson testified that Defendant "kidnaped our grandson" by entering the home and taking N.M. without permission (Doc. 59 at 5), Defendant states in her affidavit that, despite several unsuccessful attempts, she never had any direct contact with Plaintiffs until after the juvenile court entered an initial order awarding protective supervision to BCCSB on September 20, 2006. (Affidavit at ¶15). Neither Plaintiff disputes that fact. Plaintiff Ursula

admits that she was hospitalized for a period of weeks at and during the time juvenile court proceedings were initiated. The state court's April 18, 2007 order reflects that although Ursula placed N.M. with his maternal grandparents at the time,[5] she did not arrange for a custody order in their favor or provide a notarized statement authorizing them to provide N.M with medical care. (Doc. 23-1 at 11). This Court can find no violation of a constitutional right held by either Plaintiff caused by Defendant Pedoto's initial investigation and/or contact with Plaintiffs, pursuant to the authority granted to her by the juvenile court.

Plaintiffs appear to base most, if not all of their claim on Defendant's actions in removing N.M. from his grandparents' home several weeks after juvenile court proceedings were initiated, once the state court issued an October 12, 2006 order awarding temporary custody (for a period of approximately 24 hours) to BCCBS. Defendant Pedoto's affidavit and state court records both attest to the fact that Defendant took custody of N.M. from Plaintiff Tom Lawson's home pursuant to that October 12, 2006 order. To the extent that either Plaintiff bases his or her claim against Defendant Pedoto upon the removal of N.M. from his grandparents' home on October 12, 2006, Defendant is entitled to qualified immunity.

A reasonable caseworker under similar circumstances would have understood that entering the grandparents' home[6] on October 12 to remove N.M. did not violate the Fourth Amendment or any other constitutional right held by Plaintiffs. The juvenile court's October

---

[5]Plaintiff Thomas Lawson testified that they assumed custody of N.M., who was five years old at the time, only after police asked them to take the child, because their daughter, Plaintiff Ursula Lawson, needed to be hospitalized.

[6]Plaintiff Ursula asserts no ownership interest, and therefore presumably has no cognizable Fourth Amendment interest in the alleged unlawful intrusion into her father's home.

12 order specifically determined that "there is probable cause" to require custody to be transferred to BCCBS. (Doc. 23-1 at 6). The Sixth Circuit has previously recognized that state agencies have the authority to enter a home and take an endangered child into custody pursuant to an order of the juvenile court. *See* Ohio Rev. Code §2151.31(A)(1)-(2); *see also Jordan v. Murphy*, 145 Fed. Appx. 513, 517-518 (6th Cir. 2005)(social worker entitled to qualified immunity for entry into home even without a warrant or state court order, where entry and removal of children based upon conclusion that children were in imminent danger); *contrast Walsh v. Erie County Dept. Of Job and Family Serv.*, 240 F. Supp.2d 731, 749 (N.D. Ohio 2003)(absent imminent danger to children, no warrantless entry without a court order permitted).

In his deposition, Plaintiff Thomas Lawson testified that his claims against Defendant do not specifically relate to her conduct in conformity with the juvenile court's October 12 order (Doc. 58 at 11), but instead to her testimony and/or actions that resulted in the entry of that order. Plaintiff testified that Defendant "fabricated evidence to constitute probable cause to remove [N.M.] from our family with nothing to substantiate the allegation." (*Id.*). However, Plaintiff could not identify *any* specific allegations or evidence that Defendant fabricated. (*Id*. at 11, 13). Instead, Plaintiff testified that Defendant Pedoto must have provided false testimony, since the juvenile court found that the award of temporary custody of N.M. to BCCBS was necessary to prevent immediate or threatened emotional harm or danger - a finding that Plaintiff Tom Lawson asserts was erroneous. (*Id.* at 12-13). Again, Plaintiff could identify no specific information that Defendant provided to the court. (*Id.* at 13-14). As previously discussed, this Court would

find that under *Pittman*, Defendant is entitled to absolute immunity even if she provided false information to the juvenile court that led the court to erroneously conclude on October 12 that N.M. was in imminent danger.

In the alternative, I conclude that Defendant is entitled to qualified immunity because she has provided evidence, through her affidavit, that she presented no false testimony, which evidence Plaintiffs have failed to refute. (Affidavit at ¶44). Therefore, Defendant would be entitled to qualified immunity because Plaintiffs have failed to identify any constitutional right that Defendant violated.

A shelter care hearing was held the very next day on October 13, and temporary custody was returned to the Tom and Linda Lawson, with the important caveat that BCCBS was directed to continue protective supervision of N.M. "A shelter hearing is emergency in nature and not intended to be a full adjudication of rights, but instead a judicial review of whether Family Services had probable cause to remove the [child] and place [him] in the temporary care of the County. *See* O.R.C. §2131.31." *Kovacic v. Cuyahoga County Dept. of Children and Family Serv.*, 606 F.3d 301, 305 (6th Cir. 2010). The fact that the juvenile court returned temporary custody to the grandparents, with close supervision by BCCBS, does not destroy Defendant Pedoto's entitlement to qualified immunity. Defendant Pedoto is also entitled to qualified immunity as to any claim based upon her supervision of N.M. at the grandparents' home, pursuant to the state court's order.

Aside from allegations pertaining to the issuance of the October 12 order, the only other allegation in Plaintiffs' complaint is that Defendant "threatened" Plaintiffs. However, Defendant plainly states in her affidavit that she never threatened Plaintiffs at any time. (Affidavit at ¶43). Although it was Plaintiffs burden to respond with particular facts in

opposition, they have submitted no affidavits or other probative evidence that Defendant threatened either Plaintiff in any manner. Rather, Plaintiffs merely reiterate their non-specific allegation that Defendant "threaten[ed] the grandparents." (Doc. 23 at 3).

Defendant is entitled to summary judgment based upon her affidavit, in light of Plaintiffs' failure to produce any contrary evidence articulating what unconstitutional action that Defendant is alleged to have taken, or words she is alleged to have spoken. Plaintiffs' conclusory reference to a "threat" does not demonstrate that Defendant violated any constitutional right held by either Plaintiff; therefore, Defendant is entitled to qualified immunity. If the alleged "threat" was merely Defendant's statement about the juvenile court's involvement, it was no threat at all. *See, e.g., Smith v. Williams-Ash*, 520 F.3d 596, 600 (6th Cir. 2008)(holding that the "threat of formal removal proceedings" used to persuade parents to agree to agency plan did not violate parental rights, but instead "is a dilemma implicit in any settlement process," quoting *Dupuy v. Samuels*, 465 F.3d 757, 761 (7th Cir. 2006)).

To the extent that Plaintiffs *may* be alleging (however inartfully) that Defendant made material misrepresentations to her supervising agency as opposed to the juvenile court, such conduct arguably would not be protected by absolute immunity. However, even assuming that conduct would violate a fundamental liberty interest in maintaining Plaintiffs' parent-child and/or grandparent/child relationship, the Sixth Circuit in *Pittman* held that a social worker would nonetheless be entitled to qualified immunity under such circumstances. The court held that the social worker could not be held liable because, "to the extent that Pittman suffered a deprivation of his fundamental right to family integrity,

that deprivation was perpetrated by the juvenile court, not by [the defendant].” *Id.* at 729. The Sixth Circuit held that even if the social worker’s actions led the agency to draw the wrong custodial conclusion, that did not violate the parent’s rights, because although the agency “makes an initial determination as to the appropriate placement for a child...that determination is not binding on interested parties, including the parents, until the juvenile court approves and journalizes the child’s case plan....” *Id.* “Because the juvenile court has the ultimate decisionmaking power with respect to placement and custody, it alone could deprive Pittman of his fundamental right” and the caseworker was entitled to qualified immunity. *See also McCabe v. Mahoning County Children Serv. Bd.*, 2010 WL 3326909 * 6 (N.D. Ohio Aug. 20, 2010)(investigating caseworker acted reasonably and entitled to qualified immunity in alleging child abuse, though later adjudicated as false; §1983 claim dismissed where authority to remove child resided exclusively with juvenile court).

### C. Additional Bases for Judgment: The Lack of Any Constitutional Violation and The Statute of Limitations

As previously discussed, a defendant is entitled to qualified immunity if a plaintiff fails to demonstrate the violation of any clearly established constitutional right. Although the Court has primarily referenced the Fourth Amendment above, Plaintiffs also allege that Defendant violated their Fifth, Eighth, Ninth, and Fourteenth Amendment rights. All of the alleged constitutional violations are premised upon Plaintiffs’ mistaken assumption that when the juvenile court on April 18, 2007 vacated its prior custody orders concerning N.M., it also determined that there was *never* probable cause - even in 2006- that N.M. was a dependent child over whom the court had jurisdiction. However, the state juvenile court’s

2007 final order of disposition, while finding that N.M. could no longer be considered to be a dependent child and therefore vacating the prior supervision orders, in no way determined that N.M. was *never* a dependent child.

Ohio Revised Code §2151.04(A) includes in the definition of a "dependent child," any child who is "without adequate parental care, through no fault of the child's parents, guardian, or custodian." Other subsections of the same statute additionally define as a "dependent child" one who "lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian" or whose environment "is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C. §2151.03(B) and (C). In this case, the juvenile court became involved at a time when N.M.'s mother was hospitalized, the mother had failed to arrange for any custody order or for consent for medical care for N.M., and although N.M. had been placed with maternal grandparents, the state had been alerted to concerns regarding N.M.'s safety in that placement, and had no (initial) information as to the wishes of the biological parents. All of these circumstances - referenced in Defendant's Affidavit and the juvenile court's April 2007 order - confirm that the state court had a reasonable basis for assuming jurisdiction in its initial orders. The juvenile court's final determination in April 2007 that N.M. should no longer be considered to be a dependent child did not repudiate the basis for its prior assumption of jurisdiction or render legally void the basis for its earlier orders. *See generally In re Justice*, 59 Ohio App.2d 78, 392 N.E.2d 897 (Ohio Ct. App. 1978)(earlier determination that child was not dependent did not preclude later different determination).

The Court will not repeat its analysis of why Defendant's actions, taken pursuant to the orders of the juvenile court, did not violate the Fourth Amendment. Plaintiffs additionally argue that their Eighth Amendment right to be free of cruel and unusual punishment was violated by Defendant's removal of N.M. from Tom Lawson's home. Aside from the apparent authority of the state juvenile court order, the Eighth Amendment simply does not apply to Plaintiffs' asserted right to protection from interference with the family relationship.

Plaintiffs fail to explain any basis for their claims that Defendant violated their Fifth, Ninth and Fourteenth Amendment rights. While difficult to decipher, Plaintiffs' references to the Fifth and Fourteenth Amendment may be based on upon a frivolous argument that awarding immunity to a state official such as Defendant Pedoto violates due process. Plaintiffs' reference to the Ninth Amendment is also meritless, since that amendment "does not confer substantive rights" and therefore cannot be used as a basis for a claim under 42 U.S.C. §1983. *See Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991).

Last, this Court notes that Defendant Pedoto included the statute of limitations as an affirmative defense in her Answer. (*See* Doc. 17). There is some authority suggesting that Plaintiffs' claims would be barred by the applicable limitations period, to the extent that all actions taken by Defendant were taken not later than October 2006, more than two years prior to suit being filed. *See Kovacic v. Cuyahoga County Dept*., 606 F.3d at 307 (holding that §1983 suit was barred when alleged unlawful removal of children occurred more than two years prior to filing of Plaintiff's federal suit; subsequent state court order dismissing juvenile court case did not extend limitations period). However, because

Defendant has not presented the defense in her pending motion for summary judgment, she is presumed to have waived it at this juncture. *See generally Export-Import Bank of U.S. v. Advanced Polymer Sciences, Inc.*, 604 F.3d 242, 248 (6th Cir. 2010)(holding that defendant waived statute of limitations defense, citing Rule 8(c), Fed. R. Civ. P.).

**D. Plaintiff Linda Lawson's Motion to Dismiss**

Defendant filed her motion for summary judgment on May 31, 2011. In lieu of any response, Plaintiff Linda Lawson moved to voluntarily dismiss her claims on July 8, 2011, presumably without prejudice, on grounds that she is "no longer a plaintiff in this case." (Doc. 63). Although Defendant filed no response to Plaintiff's motion, the Court concludes that the motion should be denied as moot in light of the recommended disposition of the Defendant's motion for summary judgment.

**IV. Conclusion and Recommendation**

Accordingly, **IT IS RECOMMENDED:**

1. That Defendant's final motion for summary judgment (Doc. 60) be **GRANTED,** and that judgment be entered in favor of the Defendant as a matter of law on all claims**;**

2. That Plaintiff Linda Lawson's motion to dismiss (Doc. 63) be **DENIED AS MOOT**;

3. That the final pretrial and trial dates be vacated, that this case be closed, and that Defendant Pedoto's motion to exclude evidence (Doc. 67) also be **DENIED AS MOOT**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

URSULA Y LAWSON MCINTOSH, et al.,

Plaintiffs,

v.

BUTLER COUNTY CHILDREN'S SERVICES BOARD, et al.,

Defendants.

Case No. 1:09-cv-274

Spiegel, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).